UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GERRY WILLIAMS,

        Plaintiff,

   v.

DR. KUENZI; et al.,

        Defendants.
                                         /

No. C 06-1418 SI (pr)

**ORDER OF DISMISSAL**

## INTRODUCTION

Gerry Williams, a prisoner at Salinas Valley State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983. Defendants have filed two motions to dismiss in which they argue that Williams failed to exhaust administrative remedies before filing the action. Williams has opposed the motions. Also before the court for consideration are plaintiff's request for default as to defendant Nguyen and motion to provide information about defendant Nguyen. The action will be dismissed because administrative remedies were not exhausted before it was filed.

## BACKGROUND

This action concerns three different instances of alleged deliberate indifference to Williams' dental and medical needs. The court found cognizable three separate Eighth Amendment claims. The factual allegations for each claim are recounted because the exhaustion analysis depends in large part on the scope and nature of each of the claims.

The first claim was against Dr. Kuenzi for deliberate indifference to Williams' dental

needs. The court described the factual basis of this claim in the order of service: On or about January 5, 2003, Williams requested that a broken tooth be extracted and he be given dentures. He submitted numerous medical request slips and was eventually sent to the clinic in or about August 2003. Dr. Kuenzi, the dentist, took x-rays of the tooth and determined that it required oral surgery to extract. "Without the aid of any pain medication, plaintiff was scheduled to see a special dentist for oral surgery and extraction." Amended Complaint, p. 3-a. Oral surgery was done on or about December 22, 2003. Dr. Kuenzi told Williams dentures would be made after the gum healed at the extraction site, and that it would take at least four months for the gum to heal. Williams submitted many requests for dentures between May 1, 2004 and August 10, 2004 because it was very painful to eat without dentures. Williams saw Dr. Kuenzi walking to the clinic and asked him why he hadn't been sent to the clinic for dentures and Dr. Kuenzi said that he was on a waiting list and would wait longer if he kept submitting inmate request slips and 602s. Williams repeated his complaints whenever he saw the dentist walking to and from the clinic over the next few months. Williams filed an inmate appeal that was eventually granted and stated that he would receive dental care by the end of September 2005. It is unclear from his amended complaint whether he did not receive his dentures at all or not until September 2005.

The second claim was against correctional officer J.J. McAnelly for deliberate indifference to medical needs based on his alleged interference with a cardiology examination on September 8, 2005. Correctional officer J.J. McAnelly, who escorted Williams to an appointment to take a treadmill stress test, allegedly refused to remove Williams' handcuffs and waist restraints so that he could run on the treadmill and get an accurate test.

The third claim was against defendant Dr. Nguyen and nurse William Delfs for deliberate indifference to medical needs. Williams alleged that these defendants refused to order a replacement copy of an EEG that had been done in February 2005 but had not been forwarded to the prison and refused to renew medication that had been prescribed for Williams' seizure

disorder. He alleged that Dr. Nguyen and nurse Delfs repeatedly failed and refused to schedule him for an examination. Dr. Nguyen allegedly claimed to be interested only in doing follow-up work on a holter monitor (a device used to evaluate cardiac health) that Williams was scheduled to wear. Dr. Nguyen and nurse Delfs allegedly refused to refill the medication for Williams' pain and spasms related to the seizure problem. Williams alleged that Dr. Nguyen and nurse Delfs claimed they could not refill the medication until they saw the EEG report, but they refused to order another EEG or order another copy of the earlier report from the February 2005 EEG.

Williams did file some administrative appeals but pursued none of them to the Director's level for decision. The key question here is whether Williams' efforts were sufficient to exhaust available administrative remedies.

**DISCUSSION**

A. <u>Defendants' Motions To Dismiss</u>[1]

    1. <u>Exhaustion Law</u>

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." See Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director

---

[1] There are two motions to dismiss pending because service of process was delayed as to two defendants. Defendants McAnelly and Delfs filed a motion to dismiss before defendants Kuenzi and Nguyen had been served with process. Once served with process, defendants Kuenzi and Nguyen filed a motion. The motions make similar arguments. Plaintiff opposed both motions.

1  of the California Department of Corrections. See id. § 3084.5; Ngo v. Woodford, 126 S. Ct.
2  2378, 2383 (2006); Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).

3      Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534
4  U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet
5  federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even
6  when the prisoner seeks relief not available in grievance proceedings, notably money damages,
7  exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Similarly,
8  exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general
9  circumstances or particular episodes, and whether they allege excessive force or some other
10 wrong. Porter, 534 U.S. at 532. The PLRA exhaustion requirement requires "proper
11 exhaustion" of available administrative remedies. Woodford v. Ngo, 126 S. Ct. 2378, 2387
12 (2006).

13     A prisoner's failure to exhaust administrative remedies is a matter in abatement.
14 Defendants have the burden of raising and proving the absence of exhaustion, and may do so by
15 way of an unenumerated Rule12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.
16 2003). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court
17 may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20, citing Ritza
18 v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988). The court
19 can decide factual issues in a jurisdictional or related type of motion because there is no right
20 to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right
21 to a jury trial). See id. Wyatt and Ritza allow this court to resolve factual disputes, but only
22 with regard to the exhaustion issue.

4

2. <u>Williams' Inmate Appeals</u>

    a. <u>Claim 1 - Dental Care Claim</u>

Williams filed two inmate appeals regarding his dental care.[2] His first inmate appeal was dated August 8, 2005, and complained that he had been on the waiting list for dental care for more than 2-1/2 years and had not received any care, although he had submitted several request slips for dental care. In the "action requested" part of the appeal, Williams wrote: "It is thus requested that subject receive immediate dental care, or be transferred to an institution where subject can be placed on a special diet or receive dental care and dentures." Variz Decl., Exh. B, p. 1 § B. The staff response at the informal level was dated August 18, 2005, and stated "'Partially granted.' I/M Williams, you have been on an exam list since Oct. 04. However, we will try to ducat you into the C yard dental clinic for treatment before the end of Sept. 05." Id. § C. That inmate appeal was pursued no further.

His second inmate appeal was dated November 23, 2005, and again complained that he had been on a waiting list for dental care for over 2-1/2 years and had not received any type of dental care even though he had submitted request slips and even though his August 2005 inmate appeal had been granted with an indication he would receive dental care by the end of September 2005. In the "action requested" part of the appeal, Williams wrote: "It is respectfully requested that I be referred to the dentist for dental care." Variz Decl., Exh. B, p. 2, § B. The staff

---

[2]Williams contends he filed a third inmate appeal in 2004. He has submitted no copies of the documentation of such an appeal being decided at the third level. The record before this court shows that, if the appeal ever existed, it never was decided at the highest level and therefore did not exhaust administrative remedies as to any claim. Defendants have persuaded the court with their evidence that they have no record of such an appeal. Williams' statement in his August 8, 2005 inmate appeal also indicates that there was no 2004 inmate appeal, as he wrote that he had submitted an inmate appeal on or about January 10, 2003 that had been pending for about two years but did not mention any 2004 appeal. Variz Decl., Exh. B, p. 1.

    The January 10, 2003 inmate appeal to which he referred in his August 2005 inmate appeal did not satisfy the exhaustion requirement for his claim against Dr. Kuenzi, because it was filed only five days after Williams' initial request on January 5, 2003 that a broken tooth be extracted and that he be given dentures. The inmate appeal could not exhaust administrative remedies as to alleged wrongful conduct that had not yet taken place.

5

response at the informal level stated that Williams' health records indicated he had been ducated for a dental appointment on August 30, 2005 but was placed in ad-seg and therefore was not seen. The staff responded: "This appeal is partially granted in that Facility C dental staff has been made aware that Inmate Williams is back on Facility C and will schedule Inmate Williams for a dental appointment, at which time his dental needs will be addressed." Variz Decl., Exh. B, p. 3. This inmate appeal was pursued no further.

The court finds that administrative remedies were not exhausted as to the claim that Dr. Kuenzi was deliberately indifferent to Williams' dental needs. Both inmate appeals were only "partially granted" at the informal level and Williams failed to pursue either appeal beyond the informal level. As defendants argue, Williams did not exhaust the administrative remedies because, to the extent he was dissatisfied with the outcome of these inmate appeals, he could have appealed to the next level. Defendants urge that Williams could have continued to appeal the denial of his request for immediate treatment and/or transfer to a different institution. Although "the existence of further 'available' administrative remedies requires evidence, not imagination," Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2004), it cannot be said that the further potential remedies of immediate treatment and transfer are figments of defendants' imagination as Williams specifically asked for them in his appeal and had not been told that they were not available in the administrative appeals process.

Williams contends he had no need to further appeal because he was satisfied with the response he received at the informal level. His expression of satisfaction rings hollow because his presence in federal court indicates that he was less than satisfied with the response of prison officials. In particular, his prayer for relief includes a request for declaratory judgment that Dr. Kuenzi's actions "in failing to provide dental care to the plaintiff violated, and continues to violate the plaintiff's rights" and a request for "an injunction ordering that plaintiff . . . [r]eceive adequate dental care." Complaint, pp. 3-I-3-j. Allowing a prisoner to declare himself satisfied with less than full relief would completely undermine the exhaustion requirement. Cf. Booth

6

1 v. Churner, 532 U.S. at 740-41.  The relief Williams obtained was minimal: he was already on
2 a waiting list for the dental clinic, see Complaint, ¶11, and the partial grant of his inmate appeal
3 was to put him on the list to go to the dental clinic.  His cause was not advanced much by the
4 partial granting of the two inmate appeals.  The use of the phrase "partially granted" is not
5 dispositive on whether there was further relief available.  See Brown, 422 F.3d at 942, n.16.
6 Similarly, the fact that Williams was not advised specifically that further relief could be sought
7 in the administrative appeal system is not dispositive, see Brown, 422 F.3d at 942, n.17,
8 especially because the pre-printed form had form language instructing the inmate that "[i]f you
9 are dissatisfied, explain below, attach supporting documents . . . and submit to the
10 Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of
11 response."  Variz Decl., Exh. B, p. 1, § D.   Lastly, Williams is incorrect in his intimation that
12 Woodford v. Ngo only permitted (but did not require) further pursuit of the administrative relief
13 if he was dissatisfied with the response at the informal level: the case law is clear that complete
14 exhaustion is required.

16              b.       Claim 2 - McAnelly's Interference With Treadmill Stress Test
17       Williams filed an inmate appeal regarding his treadmill test on September 9, 2005 (i.e.,
18 the day after the test).  He described his problem, including that correctional officer McAnelly
19 refused to remove Williams' handcuffs and waist restraints so that he could do the test properly.
20 In the "action requested" part of the form, Williams wrote: "It is thus requested that subject be
21 re-scheduled to Natividad Medical Center for another cardiology examination without the use
22 of the restraints in such a way as to interfer [sic] with the test."  Variz Decl., Exh. C, p. 1, § B.
23 The inmate appeal bypassed the informal level and was responded to at the first formal level.
24 The reviewer marked that the appeal was "granted," and "you were referred and seen at
25 Natividad Medical Center - Cardiology on 10/6/05 for a stress test."  Variz Decl., Exh. C, p. 3,
26 § E.  Williams did not pursue the appeal any further.

Williams argues that the response was "satisfactory" to him. Opposition brief (docket # 6), p. 6. He states that he received the requested stress test before his appeal was granted, and asked rhetorically, "Why should plaintiff proceed to the Second level of review after being granted at the first level of review[?]" Id. at 6-7.

Defendants argue that administrative remedies were not exhausted because "additional relief remained available and unexhausted at the administrative level." Reply (docket # 17), p. 2. Defendants urge that the fundamental problem is that plaintiff's section 1983 claim "pertains to alleged interference with medical care, while in the administrative process Plaintiff's claim related to access to medical care." Id. Had Williams focused on the interference rather than access issue, he could have requested an investigation be launched into defendant McAnelly's conduct and for discipline of McAnelly. Id. at 3.

The court agrees with defendants. Williams' grievance did not fairly present the facts of the claim raised in this case. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." Jones v. Bock, 127 S. Ct. 910, 922-23 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Id. at 923. In California, the regulations permit an administrative appeal to be filed as to "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." 15 Cal. Code Regs. § 3084.1(a). As to content, the regulations only instruct the prisoner to "describe the problem and action requested." Id. at § 3084.2(a). Here, Williams requested that he be taken for another treadmill test to be conducted without handcuffs and leg restraints. He did not request any action against McAnaelly and did not seek any investigation as to the propriety of keeping an inmate in restraints during a medical exam. By contrast, his claim in federal court does not request a chance to have a new treadmill test and instead complains about McAnelly's refusal to remove the restraints during the treadmill test. Williams' grievance did not exhaust the claim presented

in the civil rights complaint. Cf. Brown, 422 F.3d at 943 (defendants met their burden of showing one prisoner had not exhausted where he filed his federal action before the staff misconduct investigation was completed "as well as because his grievance and federal court complaint both address issues separate from the excessive force staff complaint").

One of the reasons for the exhaustion requirement is to trim the number of suits ultimately filed in federal court. Some prisoners may be satisfied with the relief that is provided to them in the prison administrative appeal process and refrain from filing an action in federal court. See Brown, 422 F.3d at 942. The possibility that an inmate might be satisfied with prison officials' internal response is non-existent if he never asks them the right question. Cf. Ngo, 126 S. Ct. 2378 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.") This claim provides a good example of that situation: Williams apparently had the treadmill test redone a few weeks after McAnelly refused to let him take it unrestrained, which greatly undermines the idea that McAnelly's conduct caused any real harm (unless the plaintiff could show that a 4-week delay in a diagnostic test made a difference in his care and treatment). Williams might well have decided not to pay a $350.00 filing fee to litigate such a low-value claim if he had filed an appeal that asked prison officials to investigate and they had agreed that McAnelly erred in keeping Williams restrained during the medical test. When he never asked prison officials to investigate or address McAnelly's conduct, he all but guaranteed that they could not provide a response that would avoid litigation.

    c.  Claim 3 - Seizure Disorder Medical Care And Medications

Williams filed an inmate appeal on November 30, 2005 concerning his seizure disorder medical care and medications. He stated that nurse Delfs had seen him on November 28, 2005 as a result of his request for medication for a seizure disorder. He further stated that he had been seen by a specialist in February 2005 when he was at Corcoran for the seizures and that

9

1 specialist had ordered medication and an EEG. The EEG was done at Natividad Medical Center
2 in February 2005, but never forwarded to the medical staff at Salinas Valley. He wrote that
3 nurse Delfs and Dr. Nguyen would not provide him with any medication for his disorders,
4 claiming that they were waiting for the EEG but refusing to re-order a copy of it. He further
5 alleged that nurse Delfs and Dr. Nguyen were refusing to provide him with adequate medical
6 care for his seizure disorder.   In the "action requested" part of the appeal he stated, "I am
7 requesting medical attention and medication for seizure disorder. It's been over three years
8 now." Variz Decl., Exh. D, p. 1, § B. The informal level response dated December 8, 2005
9 stated that the appeal was "partially granted in that Inmate Williams is scheduled to be seen by
10 the physician on December 13, 2005 at which time the physician will determine treatment and
11 medication as deemed appropriate." Variz Decl., Exh. D, p. 3.

12 Williams stated the inmate appeal response was satisfactory and there was no need to
13 proceed to the next level of review. Opposition brief (docket # 6), p. 7. In his Complaint,
14 however, he stated that his "pleas has [sic] fallen on deaf ears." Complaint, ¶8. And his
15 complaint was written as though the problem was ongoing: "As a proximate result of defendant
16 Doctor Nguyen and Defendant RN William Delfs and the facts alleged herein, plaintiff is
17 suffering excruciating pain." Complaint, ¶9 (emphasis added). As with his first claim, he sought
18 a declaratory judgment that defendants had violated and were continuing to violate his rights and
19 sought an injunction ordering that he "[r]eceive adequate medical attention for his seizure
20 disorder, and be prescribed the appropriate medications for seizures." Id. at 3i - 3j.

21 Defendants argue that Williams did not exhaust because he "could have continued to
22 appeal the denial of his request for medication. Additionally, according to the Complaint,
23 Plaintiff also apparently wanted a new EEG examination. Nowhere in the administrative record
24 did Plaintiff make such a request." Reply (docket # 17), p. 3.

25 The court finds defendants' argument with regard to the third claim persuasive for the
26 same reasons discussed with regard to first claim. There was more relief potentially available

United States District Court
For the Northern District of California

to Williams, had he pursued his inmate appeal further after it was only partially granted. Williams did not exhaust the administrative remedies because, to the extent he was dissatisfied with the outcome of these inmate appeals, he could have appealed to the next level

Having determined that Williams did not exhaust his administrative remedies as to any of the three claims asserted in the complaint, the entire action must be dismissed without prejudice.

B.  Plaintiff's Motions

Plaintiff's request for entry of default of defendant Nguyen is DENIED.  (Docket # 16.) Plaintiff failed to show that defendant Nguyen was in default at the time he made his request and, in any event, defendant Nguyen now has appeared in this action.

Plaintiff's "motion to provide the court with the full name of Doctor Duc Nguyen" is GRANTED.  (Docket # 18.)  The Marshal used the information plaintiff provided to serve process on Dr. Nguyen.

**CONCLUSION**

Defendants' motions to dismiss are GRANTED for plaintiff's failure to exhaust administrative remedies before filing this action.  (Docket # 9 and # 23.)  Plaintiff's request for entry of default against defendant Nguyen is DENIED.  (Docket # 16.)  Plaintiff's motion to provide the full name of defendant Nguyen is GRANTED.  (Docket # 18.)

This action is dismissed without prejudice to plaintiff filing a new action in which he asserts claims as to which administrative remedies have been exhausted.  The clerk shall close the file.

IT IS SO ORDERED.

Dated: June 18, 2007

_____
SUSAN ILLSTON
United States District Judge

11